# CONVERTIBLE PROMISSORY NOTE

$3,000,000.00                                                                                                     July 28, 2017

1. **Definitions.** As used in this Convertible Promissory Note, the following terms shall have the following meanings.

"<u>Borrower</u>" means Miller Thomson & Partners, LLC, a Delaware limited liability company.

"<u>Business Day</u>" means a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized or required by law to be closed. Unless otherwise provided, the term "days" when used herein shall mean calendar days.

"<u>Debtor Relief Laws</u>" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors generally from time to time in effect.

"<u>Effective Date</u>" means the date first set forth above.

"<u>Interest Rate</u>" means a fixed rate of eight percent (8%) per annum.

"<u>Lender</u>" means Q APARTMENTS 04 A/S, and its successors and assigns.

"<u>Maturity Date</u>" means December 31, 2017.

"<u>Maximum Rate</u>" means the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of New York (or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under New York law).

"<u>Note</u>" means this Convertible Promissory Note and all modifications, increases, replacements, renewals, and extensions of this Convertible Promissory Note.

All terms used herein, whether or not defined in this Note, and whether used in singular or plural form, shall be deemed to refer to the object of such term whether such is singular or plural in nature, as the context may suggest or require.

2.  **Promise to Pay.** For value received, Borrower unconditionally hereby promises to pay to the order of Lender, at its place of business set forth on the signature page hereto, or at such other place as the holder of this Note may hereafter designate, the principal sum of Three Million and 00/100 Dollars ($3,000,000.00) or so much thereof as may be advanced, in lawful money of the United States of America for the payment of private debts, together with interest on the unpaid principal balance from time to time owing hereon computed from the date hereof until maturity at a per annum rate which shall be, except as otherwise provided in this Note, the lesser of (a) the Interest Rate in effect from day to day, or (b) the Maximum Rate. Interest on this Note is computed on a 365/360 simple interest basis; that is by applying the ratio of the annual interest over a year of 360 days times the outstanding principal balance, times the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days as the case may be. All past due principal and matured unpaid interest, at Lender's option, shall bear interest at the Maximum Rate, whether or not the maturity of the indebtedness evidenced by this Note has been accelerated. This Note is not subject to multiple advances and does not have a revolving credit feature.

3.  **Interest Rate.** The Interest Rate.

4.  **Payments.** All principal and accrued but unpaid interest shall be due and payable on the Maturity Date.

5.  **Prepayment.** Borrower may prepay this Note in part or in full without penalty before the Maturity Date. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note but in no event will Borrower ever be required to pay any unearned interest.

6.  **Conversion.** Lender shall have the right at any time to convert all principal and interest due and owing under this Note into Preferred equity securities as issued by Borrower while this Convertible Promissory Note ("Next Equity Financing") at a price equal to eighty percent (80%) of the price paid by purchasers in the Next Equity Financing. In connection with such conversion, Lender agrees to execute and deliver the same documents executed by the purchasers in the Next Equity Financing.

7.  **Waiver.** Except as otherwise provided herein, Borrower hereby waives all notices of nonpayment, demands for payment, presentments for payment, notices of intention to accelerate maturity, notices of actual acceleration of maturity, grace, protests, notices of protest, and any other demands or notices of any kind as to this Note, diligence in collection hereof and in bringing suit hereon, and any notice of, or defense on account of, the extension of time of payments or change in the method of payments, and without further notice hereby consents to any and all renewals and extensions in the time of payment hereof either before or after maturity and the release of any party primarily or secondarily liable hereon. Borrower agrees that Lender's acceptance of partial or delinquent payments, or failure of Lender to exercise any right or remedy contained herein or in any instrument given as security for the payment of this Note

shall not be a waiver of any obligation of Borrower to Lender or constitute waiver of any similar default subsequently occurring.

8. **Events of Default and Remedies**. At the option of Lender, the entire unpaid principal balance and accrued interest owing hereon shall at once become due and payable upon the occurrence at any time of any of the following "Events of Default" (herein so called):

    A. The failure of Borrower to pay (or cause to be paid) when due any installment of principal or interest of this Note in accordance with its terms, through acceleration, or otherwise;

    B. The failure of Borrower to punctually and properly to perform, observe or comply with any of the obligations, covenants, agreements, undertakings or conditions contained in this Note;

    C. Borrower shall (a) execute an assignment for the benefit of creditors or take any action in furtherance thereof, or be or become adjudicated as bankrupt or insolvent, or (b) generally not, or be unable to, or admit in writing its inability to pay, or fail to pay, its debts generally as they become due, or (c) file a voluntary petition, or commence any other case, proceeding or other action pursuant to, or voluntarily seek the benefit or benefits of or relief under, any Debtor Relief Law or take any action in furtherance thereof, or (d) apply for or seek, acquiesce in, consent to or suffer the appointment of a receiver, trustee, custodian, liquidator or other similar official of it or any part thereof or of any significant portion of its other property, or (e) file an answer admitting the material allegations of or consenting to, or default in, a petition filed against it in any liquidation, conservatorship, bankruptcy, reorganization, rearrangement, or other insolvency proceedings;

    D. The filing of a petition, case, proceeding or other action against Borrower as a debtor under any Debtor Relief Law or seeking appointment of a receiver, trustee, custodian or liquidator of it or any part thereof or of any significant portion of its other property and (a) Borrower or Guarantor admits, acquiesces in or fails to contest diligently the material allegations thereof, or (b) the petition, case, proceeding or other action results in entry of an order for relief or order granting the relief sought against it, or (c) the petition, case, proceeding or other action is not permanently dismissed or discharged on or before the earlier of trial thereon or thirty (30) days next following the date of its filing;

    E. Borrower ceases to operate it business in the ordinary course and in a manner substantially similar to Borrower's business as of the Effective Date; and

    F. The dissolution, liquidation, termination or forfeiture of the right to do business of Borrower.

It is understood and agreed by Borrower that the foregoing "Events of Default" are cumulative. Upon the occurrence of any of the Events of Default, then the holder hereof

5458427 v1 (79297.00005.000)

may, at its option, do any one or more of the following: (a) declare the entire unpaid balance of principal and accrued, unpaid interest upon this Note to be immediately due and payable, (b) reduce any claim to judgment, (c) foreclose all liens and security interests securing payment thereof or any part thereof, if any, and/or (d) without notice of default or demand, pursue and enforce any of Lender's other rights and remedies provided under or pursuant to any applicable laws or agreement. All rights and remedies of Lender shall be cumulative and concurrent and may be pursued singularly, successively, or together, at the sole discretion of Lender, and may be exercised as often as the occasion therefor shall arise and whether or not Lender has initiated any foreclosure proceeding, judicial or otherwise. Failure by Lender to exercise any right or remedy upon the occurrence of an Event of Default shall not constitute a waiver of the right to exercise such right or remedy upon the occurrence of any subsequent Event of Default. In the event that Lender, after the occurrence of an Event of Default hereunder, consults an attorney regarding the enforcement of any of its rights under this Note or if this Note is placed in the hands of an attorney for collection or if suit be brought to enforce this Note, Borrower promises to pay all costs thereof, including reasonable attorneys' fees. Such costs and attorneys' fees shall include, without limitation, costs and reasonable attorneys' fees incurred by Lender in any appellate proceedings or in any proceedings under any present or future federal bankruptcy act, state receivership law or probate.

9. **GOVERNING LAW AND VENUE.** THIS NOTE IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN LAFAYETTE, LOUISIANA AND THE LAWS (EXCLUDING CHOICE OF LAW PROVISIONS) OF NEW YORK SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS NOTE, EXCEPT TO THE EXTENT FEDERAL LAWS OTHERWISE GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF ALL OR ANY PART OF THIS NOTE. ALL LEGAL ACTIONS RELATED TO THIS NOTE SHALL BE BROUGHT IN THE APPROPRIATE COURT OF LAW LOCATED IN LAFAYETTE, LOUISIANA, TO THE EXCLUSION OF ALL OTHER VENUES.

10. **Miscellaneous.**

   A. Notices or communications to be given under this Note shall be given to the respective parties in writing to the address set forth below.

   B. Time is of the essence for this Note.

   C. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, termination or discharge is sought.

   D. This Note and all the covenants, promises and agreements contained herein shall be binding upon Borrower's successors, assigns, heirs and personal representatives and inure to the benefit of Lender's successors and assigns.

5458427 v1 (79297.00005.000)

E. If any provision of this Note or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, then neither the remainder of this Note nor the application of such provision to other persons or circumstances nor the other instruments referred to herein shall be affected thereby, but rather shall be enforced to the greatest extent permitted by applicable law.

[Signature Page Follows]

5458427 v1 (79297.00005.000)

Effective as of the Effective Date.

Address of Lender: QAPARTMENTS OK A/S
FUGLEVANGSVEJ 11-13
1962 FREDERIKSBERG
DENMARK

C/O JACOB ANDERSEN

28/7-2017

MILLER THOMSON & PARTNERS, LLC,
a Delaware limited Liability Company

By: *Bill Miller*
Name: Bill Miller
Title: Executive Chairman

Address:
301 E. Kaliste Saloom Road
Suite 301
Lafayette, Louisiana 70508

5458427 v1 (79297.00005.000)